EDWARDS, Judge.
This case arose in 1983 when the City of Baton Rouge redesigned the uniforms for its police department. The Baton Rouge Police Department (BRPD) began wearing the new uniforms in October, 1983, and a few days later the plaintiff, Louisiana Troopers Association (LTA), filed for an injunction to prevent the change. Named as defendants were the City of Baton Rouge, Chief of Police Pat Bonnano, and Mayor Pat Screen, collectively referred to herein as the City. Mayor Screen was later dismissed from the case. The original petition was for a preliminary injunction. During the hearing the parties agreed to convert the proceeding to a hearing for permanent injunctive relief.
The basis for LTA’s suit was a statute which prohibits any other police force in the State from wearing uniforms similar to those worn by the State Police. This prohibition is clearly set down in LSA-R.S. 40:1376(C) which reads as follows:
No department, division or agency of the state or of any municipality, parish or other political subdivision of the state charged with law enforcement or the apprehension of violators of any state, municipal or parochial laws or ordinances shall provide, furnish to or permit their employees to wear a uniform of the same color, design or markings as that worn by state policemen or which is so similar in appearance as to confuse, tend to confuse, or not be clearly distinguishable from the uniforms used and worn by the police employees of the division of state police. (Emphasis added).
The matter came on for trail on January 23, 1984, resulting in dismissal of the suit at plaintiffs’ costs. We reverse.
Plaintiffs produced testimony from witnesses who said they had confused the State Police with members of BRPD. Also testifying were State Policemen who had been mistaken for City Police while in uniform. To demonstrate the similarities in the uniforms, LTA introduced, over the City’s objection, the shirt and pants worn by BRPD and by the State Police.
Baton Rouge Mayor Pat Screen testified for the City. He said that while the new uniform was being designed he had shown *378 it to Col. Grover “Bo” Garrison, Commander of the State Police, and that the colonel had voiced no objection.
Col. Garrison testified that he had seen several proposed uniforms but had approved none of them. He had doubts, he said, about his authority to forbid BRPD from adopting any uniform it wanted.
Chief of BRPD Pat Bonnano testified that he had personally overseen the development of the new uniform in every respect. He, too, said he had cleared his new design with Col. Garrison. Chief Bonnano also said that he was aware of a statutory provision giving the State Police priority in the appearance of their uniforms.
The City produced considerable testimony concerning details and small technicalities. Great scrutiny was given to the weight and texture of cloth, the size and shape of badges, the design of tie tacks and arm patches, the tiny inscriptions on shirt buttons, the presence or absence of zippers, and whether certain pockets were real or fake. Indeed, on this basis there was almost no similarity whatever between the two uniforms. The trial court was probably pursuaded by these details when it dismissed the suit.
Based on the record of testimony and the exhibits placed in evidence, we must reverse this decision. This case depends almost entirely on the trial court’s firsthand observation as to whether the uniforms are alike or not. Such a basic question is usually left to the trier of fact, who is in the best position to decide it. Moreover, it is a well established principle of law in Louisiana that an appellate court should not disturb a factual finding in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Here, not only is the issue factual, but plaintiff’s case depends entirely on whether the facts found at trial are supported by the evidence. We hold that they are not. While there is some evidence to support the judgment, that evidence is so insignificant as to result in a conclusion which is clearly wrong.
In reviewing the case, this court had available to it the uniforms placed in evidence at trial. We studied and compared them in light of all the testimony and subjected them to the standards set down by the statute.
The key words in the statute are “color, design or markings.” These terms describe the substance of a police uniform, the essence of the uniform’s appearance. In the case at bar, the uniforms are both dark blue. When compared with each other in the best lighting, one is slightly darker. The colors, however, are so close it is virtually impossible to distinguish them. It could perhaps be argued that the difference between light blue and dark blue would be sufficient to avoid the statutory prohibition if the contrast were great enough. But to distinguish dark blue from dark blue is not what the Legislature intended when it gave the State Police priority in the color of their uniforms.
In terms of “design and markings” the uniforms are so similar as to be, for all practical purposes, identical. Both the uniforms have the same gold trim on the same pockets. They have precisely the same piping on the shoulder epaulets. Even the gold buttons on the pockets are in the same places and are the same size.
An impartial observer has almost no choice but to conclude that these uniforms have the “same color, design or markings” and are so “similar in appearance as to confuse, tend to confuse, or not be clearly distinguishable from” each other. This would be all the more obvious in circumstances fraught with the stress and danger which often accompany regular police work. And it was in regular police work that the uniforms were meant to be “clearly distinguishable,” not just in the well lighted tranquillity of a courtroom.
While the uniforms are unacceptably similar in color, design and markings, they are different in detail. The hats, badges, shoulder patches, belt buckles, holsters and leathers are all different. But these differences and others like them are mere trifles *379 compared with the substance of the uniforms, which is not different.
In view of the overwhelming similarities, therefore, we find the BRPD uniform to be an unacceptable copy of the State Police Uniform.
It is ordered that the permanent injunction prayed for by LTA be and is hereby issued, prohibiting forthwith the BRPD from providing, furnishing or permitting their employees to use, wear or display the police uniform which is the subject of this litigation.
In all other matters the trial court was without error. Defendant attacks the constitutionality of the statute in its brief, but that question is not properly before this court. The trial court made no ruling on constitutionality in the judgment, and the City neither took an appeal nor filed an answer to the appeal by the LTA. It is well settled in our procedure that a judgment cannot be changed in favor of an appellee who has not either appealed from the trial court judgment or filed an answer to the appeal. To raise the question in brief or argument is not sufficient. LSA-C.C.P. art. 2133, Arrow Construction Company, Inc. v. American Employers Insurance Company, 273 So.2d 582 (La.App. 1st Cir.1973).
The City’s contention that Colonel Garrison knew about the proposed new uniform is irrelevant. The statute gives no one the authority to waive its provisions.
Costs of these proceedings are taxed to the appellee.
REVERSED.